**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FORT SMITH DIVISION**

**JOEY MCCUTCHEN and**
**FELIX CURRY**                                                                    **PLAINTIFFS**

**v.**                              **Case No.**_____

**DALTON PERSON, individually**
**and as President of the Fort**
**Smith Board of Education, and**
**Fort Smith Public School District**                          **DEFENDANTS**

**COMPLAINT**

Jurisdiction and Venue

1.  Plaintiff Joey McCutchen (hereinafter "McCutchen") is a resident of Fort Smith, Arkansas.

2.  Plaintiff Felix Curry (hereinafter "Curry") is a resident of Fort Smith, Arkansas.

3.  The Defendant Dalton Person (hereinafter "Person") is an attorney and resident of the geographic area comprising the Fort Smith, Arkansas school district and an elected member of and President of the Fort Smith Board of Education.

4.  The Defendant Fort Smith Public School District (hereinafter "District") is a school district and body corporate organized pursuant to Ark. Code Ann. § 6-13-101 *et seq.* Pursuant to Ark. Rule of Civ. Proc. 4(f)(15) service may be effected on Dalton Person as President of the Fort Smith Board of Education or Terry Morawski as Superintendent of the Fort Smith School District.

1

5. All acts complained of occurred in Fort Smith, Arkansas.

6. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 1983, Amendment I to the United States Constitution, and Federal Rule of Civil Procedure 57.

7. Mr. McCutchen and Mr. Curry seeks both monetary and injunctive relief as authorized by 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

8. Venue is proper given the residence of all parties.

<u>Factual Background</u>

9. On or about November 22, 2024, Plaintiff Curry, then head coach of the Northside High School football team, was contacted by the Fort Smith Schools Human Resource Director and the Northside High School principal Chris Carter and directed to attend a meeting with them.  At that meeting, Curry was informed his contract with Northside High School would not be renewed.

10. On or about December 4, 2024, the Principal Carter informed Curry he was being reassigned to the Student Detention Center.

11. On December 11, 2024 Joey McCutchen, attorney for Curry, received an email from Marshall Nye, attorney for the Fort Smith Board of Education.  In addition to declining to meet with Curry and McCutchen, Nye stated:

> In terms of Coach Curry's request to address the Board at its next meeting, that will be declined if he intends to address his employment as Coach is in the process of filing a grievance, and addressing the Board in advance would be improper.

*See Exhibit 1, December 11, 2024 email from Nye to McCutchen.*  Nye did not cite any policy of the Fort Smith Board of Education, the District, or any applicable statute

for Defendants' denial of Curry's request to speak during the public comment period of the Board of Education meeting scheduled for December 16, 2024.

12.  In response, McCutchen requested Nye put McCutchen on the agenda or list him as a member of the public to speak during the public comment period.  *See Exhibit 2, December 11, 2024 email from McCutchen to Nye.*

13.  Nye responded, again denying Curry or McCutchen the ability to speak during the public comment period, claiming:

> Joey, citizen participation is not a forum to address a personnel matter, especially when a grievance is being submitted.  The grievance will need to proceed pursuant to District policy, with the ultimate appeal going to the Board.  Just as it would be improper for Coach Curry to usurp this process by addressing the Board at this junction, it would be improper for his representative to speak on his behalf.  So, if your intent is to address the Board regarding Coach Curry, or any personnel matter, that will not be permitted.

*See Exhibit 3, December 11, 2024 email from Nye to McCutchen.*  Again, Nye did not cite a policy of the Fort Smith Board of Education, the District, or any applicable statute for Defendants' denial of the public's right to speak during the public comment period.

14. On December 16, 2024, the Fort Smith Board of Education conducted its regularly scheduled meeting.

15.  Pursuant to the agenda, after opening the meeting, the board retired to executive session.  Following the executive session, the District's mission statement was read, followed by a moment of silence and the pledge of allegiance.  *See Exhibit 4, Agenda.*

16. The next item on the agenda was "Citizens Participation," the public comment period wherein members of the public are permitted to address the Board. This is pursuant to the Board Governance and Operations policy, Section 1.14. *See Exhibit 5, Board Governance and Operations, § 1.14.* The policy provides in pertinent part:

> During regular meetings, the Board also may permit a total of up to fifteen (15) minutes for public comments. Individuals desiring to address the Board during this allotted time must sign up prior to the commencement of the meeting and provide the name of the presented and subject matter of the comments to be offered. . . The members of the Board will listen to the patron's presentation, but shall not respond to the presented during the meeting in which the presentation is made. . . The Board in its discretion may choose to lengthen the time for public comments or eliminate public comments altogether at any meeting.

17. The policy does not contain any other limitation to the public comment period. There is no limitation on who may speak, or the content of the speech contained in the policy. The Board may choose to eliminate public comment altogether or extend the time, but there are no other restrictions pursuant to the policy.

18. On December 16, 2024, McCutchen and Curry signed in to speak during the public comment along with other members of the public.

19. During the public comment and prior to McCutchen's turn on the list, several other members of the public addressed the issue of the reassignment of Curry.

20. When it was McCutchen's turn to speak, he began to approach the podium. As McCutchen approached, Person inquired from his seat if McCutchen was the "appointed counsel" for Mr. Curry.

21. McCutchen responded to Person's inquiry, stating "I am his appointed counsel and I am here to speak as a citizen tonight."

4

22. Person replied McCutchen would not be recognized during citizen comment and not be allowed to speak. Person then directed a police officer to escort McCutchen from the podium. McCutchen complied with the officer's request.

<u>Count One: Violation of Plaintiffs' First Amendment Rights</u>

23. The "Citizen Participation" portion of the Fort Smith School Board's meeting is a public forum in that this is precisely the time designated for citizens to speak on matters affecting the public school system. Both prior to and after McCutchen's attempt to speak, other citizens were allowed to do speak about various issues, including the attempted reassignment of Curry.

24. Defendants violated McCutchen and Curry's First Amendment Rights by denying them the same opportunity afforded to all citizens and ordering McCutchen's removal from the December 16, 2024 Board of Education meeting.

25. Plaintiffs attempted to participate in a public, open meeting of government and to exercise the same rights as many other citizens did that same evening. Neither Plaintiff disrupted the meeting in any way prior to being removed.

26. Defendants' denial of Plaintiffs' opportunity to speak because Defendants did not like what they suspected Plaintiffs would say was an unlawful deprivation of Plaintiffs' First Amendment Rights.

<u>Count Two: Violation of Plaintiffs' Fourteenth Amendment Rights</u>

27. Defendants denied Plaintiffs the right to speak and removed Plaintiff McCutchen from a public meeting despite the fact McCutchen did not disrupt the meeting.

28. Defendants' deprivation of Plaintiffs' Constitutional rights were based on Defendants' desire to prevent Plaintiffs, and only Plaintiffs, from addressing a matter of public interest.

29. No policy existed authorizing Defendants' actions, in fact a contrary policy existed. Even had the District or Board of Education enacted a policy which allowed its president to pick and choose who spoke during citizen comment based on who they were or the expected content of their speech, such a policy would be in violation of the Plaintiffs' Constitutional rights.

30. Defendant Person as an attorney as well as the District had fair warning their conduct in limiting speech based on the content or the specific speaker, was unconstitutional. The concept that limited speech in such a manner is unconstitutional is not a novel or unique legal theory.

WHEREFORE, premises considered, Plaintiffs Felix Curry and Joey McCutchen pray this Court:

a. Permanently enjoin the Defendants, and each of them, from denying citizens the exercise of their First Amendment rights at meetings of the Fort Smith Board of Education;

b. Award Plaintiffs monetary damages for violations of their federal civil rights;

c. Award Plaintiffs reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

d. Grant any and all further relief this Court deems proper.

> Respectfully submitted,
> JOEY MCCUTCHEN, PLAINTIFF
> FELIX CURRY, PLAINTIFF

By:_____
    Matt Bishop, AB#2001276
    BISHOP LAW FIRM
    3739 N. Steele Blvd. Ste. 380
    Fayetteville, Arkansas 72703
    p: (479) 363-6171
    f: (479) 363-6461
    matt@bishoplawfirm.org

# EXHIBIT 1

## December 11, 2024 Email from Nye to McCutchen

From: Marshall S. Ney <mney@fridayfirm.com>
Sent: Wednesday, December 11, 2024 3:25 PM
To: Joey McCutchen <jmccutchen@mccutchenlawfirm.com>
Subject: RE: Coach Felix Curry

Joey – further to my response last night:

1. The District respectfully declines to meet with you and Coach Curry, as such a meeting would not be in the ordinary course and does not appear calculated to be productive.

2. All non-renewals for the District will be handled in the ordinary course.  The District will not be issuing any special notices/letters.

3. The Board has not voted on any non-renewals.

4. In terms of Coach Curry's request to address the Board at its next meeting, that will be declined if he intends to address his employment as Coach is in the process of filing a grievance, and addressing the Board in advance would be improper.

Thank you.

Marshall

MARSHALL S. NEY  |  ATTORNEY



mney@fridayfirm.com  |  Direct: (479) 695-6049  |  Fax (501) 244-5389
3350 S. Pinnacle Hills Pkwy, Suite 301
Rogers, Arkansas 72758  |  www.FridayFirm.com

This e_mail message and any attachments contain confidential information that may be legally privileged¡ If you are not the intended recipient? you must not review? retransmit? convert to hard copy? copy? use or disseminate this e_mail or any attachments to it¡ If you have received this e_mail in error? please immediately notify us by return e_mail or by telephone at 000_000_0000 and delete this e_mail¡ Please note that if this e_mail contains a forwarded message or is a reply to a prior message? some or all of the contents of this message or any attachments may not have been produced by Friday? Eldredge.™ Clark? LLP¡ Receipt of e_mail does not establish an attorney_client relationship¡

# EXHIBIT 2

**December 11, 2024 Email from McCutchen to Nye**

From: Joey McCutchen <jmccutchen@mccutchenlawfirm.com>
Sent: Wednesday, December 11, 2024 4:15 PM
To: Marshall S. Ney <mney@fridayfirm.com>
Subject: RE: Coach Felix Curry

Thank you.

Please either put me on the public comment section of the FS Board of Education Agenda on Monday, December 16  or put me on the agenda. Please advise if I need to make any special requests.

Joey McCutchen
Trial Lawyer
"Protect the 7th Amendment; it's the one that protects all the rest."
McCutchen Napurano - The Law Firm
P.O. Box 1971, 1622 North B Street
Fort Smith, AR 72901
Office: (479) 783-0036   Fax: (479) 783-5168

CONFIDENTIALITY.NOTE¿.The.contents.of.this.e_mail?including.all.attachments?may.be.privileged.by. the.Attorney_Client.privilege?the.Electronic.Communications.Privacy.Act?7QUSC.°°.8076_8087?and. other.applicable.statutes.and.regulations¡ .In.the.event.that.you.received.this.e_mail.in.error.or.are.not. the.intended.recipient?please.delete.the.e_mail.and.all.attachments.immediately.and.notify.the.sender. at.the.e_mail.address.specified.above¡ .Thank.you¡

# EXHIBIT 3

**2nd December 11, 2024 Email from Nye to McCutchen**

From: Marshall S. Ney <mney@fridayfirm.com>
Sent: Thursday, December 12, 2024 1:13 PM
To: Joey McCutchen <jmccutchen@mccutchenlawfirm.com>
Subject: RE: Coach Felix Curry

Joey –citizen participation is not a forum to address a personnel matter, especially when a grievance is being submitted.  The grievance will need to proceed pursuant to District policy, with the ultimate appeal going to the Board.  Just as it would be improper for Coach Curry to usurp this process by addressing the Board at this juncture, it would be improper for his representative to speak on his behalf.  So, if your intent is to address the Board regarding Coach Curry, or any personnel matter, that will not be permitted.

Thank you.

Marshall

MARSHALL S. NEY  |  ATTORNEY



mney@fridayfirm.com  |  Direct: (479) 695-6049  |  Fax (501) 244-5389

3350 S. Pinnacle Hills Pkwy, Suite 301

Rogers, Arkansas 72758  |  www.FridayFirm.com

This e_mail message and any attachments contain confidential information that may be legally privileged¡ If you are not the intended recipient?you must not review?retransmit?convert to hard copy?copy?use or disseminate this e_mail or any attachments to it¡ If you have received this e_mail in error?please immediately notify us by return e_mail or by telephone at 000_000_0000 and delete this e_mail¡ Please note that if this e_mail contains a forwarded message or is a reply to a prior message?some or all of the contents of this message or any attachments may not have been produced by Friday?Eldredge.™ .Clark?LLP¡ Receipt of e_mail does not establish an attorney_client relationship¡

# EXHIBIT 4

**Agenda of the December 16, 2024 Meeting of Fort Smith Public Schools Board of Education**

**BoardBook® Premier**

■ Home

## December 16, 2024 at 5:30 PM - Regular School Board Meeting

View Options:

👁 Show Everything
☑ Presenter
☑ Description
☐ Attachments
👁 Hide Everything

| Agenda |
| --- |

**I. CALL TO ORDER**
**Presenter:** Mr. Dalton Person

**II. EXECUTIVE SESSION - SUPERINTENDENT CONTRACT**
**Presenter:** Mr. Dalton Person

**III. DISTRICT MISSION AND VISION STATEMENT -** This portion of the regular meeting will begin at approximately 6:00 PM
**Presenter:** Mr. Dalton Person

**IV. MOMENT OF SILENCE**
**Presenter:** Mr. Dalton Person

**V. PLEDGE OF ALLEGIANCE**
**Presenter:** Mr. Dalton Person

**VI. CITIZENS PARTICIPATION**
**Presenter:** Mr. Dalton Person

**VII. SUPERINTENDENT'S REPORT**
**Presenter:** Dr. Terry Morawski

**VII.1.** Student Attendance and Suspension Data November 2024
**Presenter:** Dr. Michael Farrell

**VIII. CONSENT AGENDA - Action All**
**Presenter:** Mr. Dalton Person

**VIII.1.** Financial Report
**Presenter:** Mr. Charles Warren

**VIII.2.** Minutes of Previous Meeting
**Presenter:** Presenter

**VIII.3.** Professional Staff Recommendations
**Presenter:** Dr. Chris Davis

**VIII.4.** Consider Adopting Student Related Policy Changes
**Presenter:** Dr. Michael Farrell

**VIII.5.** United Way - FSPS Parents as Teachers Contract Agreement
**Presenter:** Dr. Tiffany Bone

**VIII.6.** Consider Authorizing the Sale and Disposal of Commodities
**Presenter:** Mr. Charles Warren

**IX. PRESENTATION - PLAYGROUND COMMITTEE UPDATE**
**Presenter:** Mr. Shawn Shaffer

**X. PRESENTATION - MIDDLE SCHOOL TRACK UPDATE**
**Presenter:** Mr. Shawn Shaffer/Mr. Joseph Velasquez

**XI. CONSIDER ADOPTING THE 2025-2026 SCHOOL YEAR CALENDAR**
**Presenter:** Dr. Chris Davis

**XII. PRESENTATION - STUDENT ACADEMIC ACHIEVEMENT**
**Presenter:** Dr Tiffany Bone

**XIII. BOARD MEMBERS FORUM**
**Presenter:** Mr. Dalton Person

**XIV. ADJOURN**

**Presenter:** Mr. Dalton Person

<< Back to the Public Page for Fort Smith Public Schools

**Terms and Conditions of Use**                    **Privacy Policy**



support@boardbook.org
888.587.2665

# EXHIBIT 5

**Fort Smith Public Schools Board of Education Board Governance and Operations Policy**

# TABLE OF CONTENTS

## SECTION 1—BOARD GOVERNANCE and OPERATIONS

1.1—LEGAL STATUS OF THE BOARD _____ 1

1.2—BOARD ORGANIZATION and VACANCIES _____ 2

1.3—DUTIES OF THE PRESIDENT _____ 5

1.4—DUTIES OF VICE PRESIDENT _____ 6

1.5—DUTIES OF THE SECRETARY _____ 7

1.6.1—ATTENDING MEETINGS REMOTELY_____ 8

1.6—BOARD MEMBER VOTING_____ 9

1.7—POWERS AND DUTIES OF THE BOARD _____ 10

1.8—GOVERNANCE BY POLICY _____ 11

1.9—POLICY FORMULATION _____ 12

1.10—RESERVED _____ 15

1.11—BOARD MEMBER TRAINING _____ 16

1.12—COMMITTEES _____ 18

1.13—SUPERINTENDENT / BOARD RELATIONSHIP _____ 19

1.14—MEETING AGENDA _____ 20

1.15—TORT IMMUNITY _____ 22

1.16—DUTIES OF BOARD DISBURSING OFFICER _____ 23

1.17—NEPOTISM_____ 24

1.18—DISTRICT AUDITS _____ 26

1.19—BOARD MEMBER LENGTH OF TERM and HOLDOVERS _____ 27

1.20—RESERVED _____ 28

1.21—DATE OF ANNUAL SCHOOL BOARD ELECTION _____ 29

1.22—RECORDING OF BOARD MEETINGS_____ 30

1.24—BOARD REPRESENTATIVE ON EDUCATION SERVICE COOP BOARD OF
DIRECTORS _____ 31

**BOARD GOVERNANCE AND
OPERATIONS**

## 1.1—LEGAL STATUS OF THE BOARD

By the authority of Article 14 of the Arkansas Constitution, the General Assembly has provided that locally elected school boards will be responsible for the lawful operation and maintenance of its local schools.

While the Fort Smith School Board ("Board") has a broad range of powers and duties, its individual members ("Member(s)" or "Board Member(s)") only have authority when exercising their responsibilities in a legally convened meeting acting as a whole. The sole exception is when an individual Member has been delegated authority to represent the Board for a specific, defined purpose. In matters such as personnel discipline, expulsions, and student suspensions initiated by the Superintendent, the Board serves as a finder of fact, not unlike a jury. For this reason, the Board should not be involved in or, to the extent practicable, informed of the facts or allegations of such matters prior to a board hearing on those disciplinary matters in which the Board could become involved.

It is the Policy of the Board that its actions will be taken with due regard for its legal responsibilities and in the belief that its actions shall be in the best interests of its students and the Fort Smith School District ("District") as a whole.

Legal Reference:        A.C.A. § 6-13-620

Additional Reference: ASBA Model Policies

Date Adopted:          January 24, 2022
Last Revised:

## 1.2—BOARD ORGANIZATION and VACANCIES

**Election of Officers**

The Board shall elect a President, Vice President, and Secretary at the first regular meeting following the later of: the certification of the results of the annual District election; or if there is a runoff election, at the first regular meeting following the certification of the results of a run-off election. Officers shall serve one-year terms and perform those duties as prescribed by policy of the Board. The Board shall also elect through a resolution passed by a majority vote one of its members to be the primary Board disbursing officer and may designate one or more additional Board Members as alternate Board disbursing officers. A copy of the resolution will be sent to the county treasurer and to the director of the Department of Finance and Administration.

When the position of an officer of the Board becomes vacant, the officer's position shall be filled for the remainder of the year in the same manner as for the annual election of officers after the annual District election. Election of Board officers shall not occur except on a once per year basis or to fill an officer vacancy.

**Vacancies**

A vacancy shall exist on the Board if a Board Member:

1. Moves his or her bona fide permanent residence outside the boundaries of the District;
2. Fails to physically attend three (3) consecutive regular meetings of the Board;
3. Fails to physically attend six (6) regularly scheduled Board meetings of the Board in a calendar year;
4. Fails to receive the mandatory hours of training within the statutory time period;
5. Is convicted of a felony;
6. Is called to active military duty;
7. Has served a full-length term as a holdover and has not subsequently been elected to another term;
8. Resigned from the Board ; or
9. Dies.

If credible evidence of a vacancy existing due to numbers 1 through 4 is presented to the President, Vice President, or Secretary of a Board, a majority of the members of the Board shall:

1. Vote on whether to appoint an independent investigator to investigate the credible evidence presented; and
2. Hold a hearing on the existence of a vacancy.

A vacancy does not exist for numbers 2, 3, and 4 if the reason for the member's absences or failure to receive training is either:

1. Military service of the Board Member; or
2. Illness of the Board Member that is verified by a written sworn statement of the Board Member's attending physician.

When a vacancy occurs on the Board, a successor to a vacated position shall be appointed:

1.      If at least a quorum of the Board remains, by majority vote of the remaining Board within thirty (30) days for vacancies resulting from numbers 1 through 8 above and up to sixty (60) days for vacancies due to the Board Member's death; or

2.      If less than a quorum of the Board remains or the Board fails to fill the vacancy within the time permitted, by the county quorum court.

The successor to a vacant position must be registered to vote in the District and, if applicable, reside in the zone of the vacant position.

When a vacancy on the Board resulted from a Board Member's failure to receive the required training within the statutory time period, the Board shall not appoint the individual who failed to receive the required training to fill the vacancy.

Except for a temporary vacancy due to military service, an individual appointed to fill a vacancy shall serve until the annual school election following the appointment. An individual appointed to fill a temporary vacancy due to military service shall serve until either the Board Member who has been called to active military service returns and notifies the Board Secretary of his/her desire to resume service on the Board or the Board Member's term expires. If a Board Member's term expires while the Board Member is on active military duty, the Board Member may run for re-election; if re-elected, the re-elected Board Member's temporary vacancy shall be filled again in the manner prescribed in this Policy.

The Secretary of the Board shall notify the county clerk of an appointment to the Board within five (5) days of the appointment being made. The notice shall include the name of the appointed Board Member and the expiration date of his or her term.

An individual appointed to fill a vacancy must submit proof of having received the oath of office to the county clerk before the individual may assume any duties.

| | |
|---|---|
| Cross References: | 1.3—DUTIES OF THE PRESIDENT |
| | 1.4—DUTIES OF THE VICE-PRESIDENT |
| | 1.5—DUTIES OF THE SECRETARY |
| | 1.11—BOARD MEMBER TRAINING |
| | 1.16 —DUTIES OF BOARD DISBURSING OFFICER |
| | 1.19—BOARD MEMBER LENGTH OF TERM and HOLDOVERS |
| | 1.20—DUTIES OF THE LEGISLATIVE LIAISON |
| | |
| Legal References: | A.C.A. § 6-13-611 |
| | A.C.A. § 6-13-612 |
| | A.C.A. § 6-13-613 |
| | A.C.A. § 6-13-616 |
| | A.C.A. § 6-13-618 |
| | A.C.A. § 6-13-629 |

Additional Reference: ASBA Model Policies

Date Adopted:        January 24, 2022
Last Revised:

**1.3—DUTIES OF THE PRESIDENT**

The duties of the President of the Board shall include, but shall not be limited to:
1.      Presiding at all meetings of the Board;
2.      Calling special meetings of the Board;
3.      Working with the Superintendent to develop Board meeting agendas;
4.      Signing all official documents that require the signature of the chief officer of the Board;
5.      Appointing all committees of the Board and serving as ex-officio member of such committees; and
6.      Performing such other duties as may be prescribed by law or action of the Board.

The President shall have the same right as other members to offer resolutions, make or second motions, discuss questions, and to vote.


Legal Reference:       A.C.A. § 6-13-619 (a) (1)

Additional Reference: ASBA Model Policies

Date Adopted:          January 24, 2022
Last Revised:

**1.4—DUTIES OF THE VICE-PRESIDENT**

The duties of the Vice President of the Board shall include:
1.      Serving as presiding officer at all Board meetings from which the President is absent; and
2.      Performing such other duties as may be prescribed by action of the Board.

Additional Reference: ASBA Model Policies

Date Adopted:          January 24, 2022
Last Revised:

**1.5—DUTIES OF THE SECRETARY**

The duties of the Secretary of the Board shall include:
1.    Being responsible to see that a full and accurate record of the proceedings of the Board are permanently kept and shall;
      a.    Record in the minutes, the members present, by name, at the meeting including the time of any Member's late arrival to, or early departure from, a meeting;
      b.    Record the outcome of all votes taken including the time at which the vote is taken.
2.    Serving as presiding officer in the absence of the President and the Vice President;
3.    Being responsible for official correspondence of the Board;
4.    Signing all official documents that require the signature of the Secretary of the Board;
5.    Calling special meetings of the Board; and
6.    Performing such other duties as may be prescribed by the Board.


Legal Reference:      A.C.A. § 6-13-619 (a)(1)(b)

Additional Reference: ASBA Model Policies

Date Adopted:      January 24, 2022
Last Revised:

**1.6.1—ATTENDING MEETINGS REMOTELY**

The Board permits members who would be otherwise unable to physically attend a Board meeting to attend the meeting remotely. Except where prohibited by this Policy, a Board Member who attends remotely shall have the same rights and privileges as if the Board Member were physically present. A Board Member who will be unable to physically attend a Board meeting is responsible for notifying the Superintendent at least one (1) hour prior to the scheduled meeting time that the member will be unable to physically attend the meeting and intends to attend remotely.

The method used to permit members of the Board to attend remotely shall:
1.   Provide a method for the President or Secretary of the Board to verify the identity of the Member(s) attending remotely;
2.   Allow the Members of the Board physically present and members of the public to hear the Member(s) attending remotely at all times; and
3.   Allow the Member(s) attending remotely to hear the Members of the Board physically present at the meeting at all times and any public comment.

A Board Member attending remotely shall not:
1.   Attend an executive session or closed hearing; or
2.   Vote on an issue that is the subject of an executive session or closed hearing.

The Board minutes shall indicate if a Board Member is attending remotely and the method used to permit the Member to attend remotely. If an executive session occurs during a meeting when a Board Member is attending remotely, the minutes will treat the Board Member attending remotely as though the member had left the room for any vote on a subject discussed in the executive session.

Up to three (3) times per calendar year, the Board may count a Board Member attending remotely for the purpose of establishing a quorum. A Board Member attending remotely used to establish a quorum shall not be counted to determine if the Board may enter executive session.

Legal Reference:        A.C.A. § 6-13-619

Additional Reference: ASBA Model Policies

Date Adopted:          January 24, 2022
Last Revised:

## 1.6—BOARD MEMBER VOTING

### Establishment of a Quorum

A quorum of the Board is a majority of the membership of the Board. No vote or other Board action may be taken unless there is a quorum present. Except as provided in Policy 1.6.1—ATTENDING MEETINGS REMOTELY, a Board Member must be physically present at a meeting to be counted toward establishing a quorum or to be eligible to vote. A majority of the quorum voting affirmatively is necessary for the passage of any motion. A quorum must be physically present for a Board to enter executive session for any reason.

### Voting and failure to vote

Except as provided in Policy 1.6.1—ATTENDING MEETINGS REMOTELY, all Board Members, including the President, shall vote on each motion, following a second and discussion of that motion.

Failure of any Board Member to vote, while physically present in the meeting room, shall be counted as a "no" vote, i.e., a vote against the motion.

Only those votes taken by the Board in open session are legally binding. No motion made or vote taken in executive session is legally binding, although a non-binding, unofficial and non-recorded vote may be taken in executive session to establish consensus or further discussion.

### Abstentions from Voting

In order for a Board Member to abstain from voting, he must declare a conflict and remove himself from the meeting room during the vote. A Board Member who removes himself/herself from a meeting during a vote due to a conflict of interest shall not be considered present at the meeting for the purpose of establishing a quorum until the member returns to the meeting after the vote.

In accordance with Policy 1.6.1, a Board Member who is attending remotely shall be treated as having left the room for any vote on an item discussed in executive session even if the Board Member is remotely present for the vote. The minutes shall record the Board Member attending remotely by name and describe the Board Member as non-voting in accordance with A.C.A. § 6-13-619(d)(3)(B)(ii).

Cross Reference:      1.6.1—ATTENDING MEETINGS REMOTELY

Legal Reference:      A.C.A. § 6-13-619

Additional Reference: ASBA Model Policies

Date Adopted:         January 24, 2022
Last Revised:

**1.7—POWERS AND DUTIES OF THE BOARD**

The Board, operating in accordance with state and federal laws, assumes its responsibilities for the operation of the District. The Board shall concern itself primarily with the broad questions of Policy as it exercises its legislative and judicial duties. The administrative functions of the District are delegated to the Superintendent who shall be responsible for the effective administration and supervision of the District.

Some of the duties of the Board include:
1.   Developing and adopting policies to effect the vision, mission, and direction of the District;
2.   Understanding and abiding by the proper role of the Board through study and by obtaining the necessary training professional development;
3.   Electing and employing a Superintendent and giving him/her the support needed to be able to effectively implement the Board's Policies;
4.   Conducting formal and informal evaluations of the Superintendent annually or no less often than prior to any contract extension;
5.   Employing, upon recommendation of the administrative staff and by written contract, the staff necessary for the proper conduct of the schools;
6.   Approving the selection of curriculum and seeing that all courses for study and educational content prescribed by the State Board or by law for all grades of schools are offered and taught;
7.   Reviewing, adopting, and publishing the District's budget for the ensuing year;
8.   Being responsible for providing sufficient facilities, grounds, and property and ensuring they are managed and maintained for the benefit of the District;
9.   Monitoring District finances and receiving, reviewing, and approving each annual financial audit;
10.  Understanding and overseeing District finances to ensure alignment with the District's academic and facility needs and goals;
11.  Visiting schools and classrooms when students are present no less than annually;
12.  Setting an annual salary schedule;
13.  Being fiscally responsible to the District's patrons and maintaining the millage rate necessary to support the District's budget;
14.  Involving the members of the community in the District's decisions to the fullest extent practicable; and
15.  Striving to assure that all students are challenged and are given an equitable educational opportunity.


Legal References:     A.C.A. § § 6-13-620, 622

Additional Reference: ASBA Model Policies

Date Adopted:         January 24, 2022
Last Revised:

**1.8—GOVERNANCE BY POLICY**

The District shall operate within the legal frameworks of the State and Federal Constitutions; appropriate State and Federal statutes; State rules; Federal regulations; and court decisions. The legal frameworks governing the district shall be augmented by Policies adopted by the District Board, which shall serve to further define the operations of the District.

When necessitated by unforeseen circumstances, the Superintendent shall have the power to decide and take appropriate action for an area not covered by the legal frameworks or a policy of the Board. The Superintendent shall inform the members of the Board of such action. The Board shall then consider whether it is necessary to formulate and adopt a policy to cover such circumstances.

The official copy of the Policy manual for the District shall be posted on the District's website.

The Superintendent shall formulate such practices and procedures as are necessary to implement the intentions of the Policies of the Board.


Additional Reference: ASBA Model Policies

Date Adopted:                January 24, 2022
Last Revised:

## 1.9—POLICY FORMULATION

**General Policies**
Policies that are not personnel Policies may be recommended by:
1.      The Board or any member of the Board;
2.      The Superintendent or any other employee of the District;
3.      Committee appointed by the Board; or
4.      Any member of the public.

Policies adopted by the Board shall be within the legal framework of the State and Federal Constitutions; appropriate State and Federal statutes; State rules; Federal regulations; and court decisions.

Except for personnel Policies, when reviewing a proposed Policy, the Board may elect to adopt, amend, refer back to the person proposing the Policy for further consideration, take it under advisement, reject it, or refuse to consider the proposal.

**Licensed and Classified Personnel Policies**
Personnel Policies (including employee salary schedules) shall be created, amended, or deleted in accordance with State law:

**Board Proposals**
The Board may adopt a proposed personnel Policy by a majority vote. Such Policies may be proposed to the Board by a Board Member or the Superintendent. The Board may choose to adopt the proposal, as a proposal only, by majority vote.

Following the adoption of a proposed personnel Policy, the proposal must be presented to the appropriate Personnel Policy Committee (PPC). Such presentation shall be in writing, to all members of the Committee.

When the PPC has possessed the proposed personnel Policy for a minimum of ten (10) working days from the date the PPC received the proposed Policy (i.e., ten (10) workdays, not including weekends or state or national holidays), the Chairman of the PPC, or the Chairman's designee, shall be placed on the Board of Director's meeting agenda to make an oral presentation to the Board to address the proposed Policy. Following the presentation, the Board may vote at the same meeting at which the proposal is made, or, in any case, no later than the next regular Board meeting to:
1.      Adopt the Board's original proposed Policy as a Policy;
2.      Adopt the PPC's counter proposed Policy as a Policy; or
3.      Refer the PPC's counter proposed Policy back to the PPC for further study and revision. Any such referral is subject to the same adoption process as a proposed Policy originating from the Board.

**Personnel Policies Committee Proposals**
Either PPC may recommend changes in personnel policies to the Board. When making such a proposal, the Chairman of the PPC, or the Chairman's designee, shall be placed on the Board's meeting agenda to make an oral presentation to the Board.

The Board may vote on the proposed Policy at the same meeting at which the proposal is made, or, in any case, no later than the next regular Board meeting. In voting on a proposed Policy from the PPC, the Board may:

1.      Adopt the proposal;
2.      Reject the proposal; or
3.      Refer the proposal back to the Personnel Policies Committee for further study and revision.

A copy of all personnel policies shall be signed by the President of the Board and kept in a central records location.

All personnel policies must be sent to the PPC for the minimum ten (10) days regardless of the intended Date Adopted of the Policy.

**Date Adopted of Policy changes:**
All personnel Policy changes enacted during one fiscal year will become effective on the first day of the following fiscal year, July 1. This specifically includes any changes made between May 1 and June 30 to ensure compliance with state or federal laws; state rules; federal regulations; or the Division of Elementary and Secondary Education Commissioner's Memos. In addition, changes to policies to maintain compliance with state or federal laws; state rules; federal regulations; or Commissioner's Memos that are after June 30 but are adopted within ninety (90) days from the Date Adopted of the legal change that created the need for the Policy adoption shall become effective on the final date of adoption.

Changes made to licensed personnel Policies between May 1 and June 30 that are **not** made to ensure compliance with state or federal laws; state rules; or federal regulations will take effect on July 1 of the same calendar year provided no later than five (5) working days after final board action, a notice of the change is sent to each affected employee by first class mail to the address on record in the personnel file. The notice of the change must include:

1.      The new or modified Policy or policies provided in a form that clearly shows the additions underlined and the deletions stricken;
2.      A statement that due to the change(s), the employee has the power to unilaterally rescind his/her contract for a period of thirty (30) days after the Board took final action on the Policy (Policies). The rescission must be in the form of a letter of resignation within the thirty (30) day period.

Except for Policy changes to ensure compliance with changes in the law that are adopted within the ninety (90) day window, for a Policy change to be made effective prior to July 1 of the following fiscal year, a vote must be taken the appropriate PPC.

If the affected PPC approves the earlier effective date by majority vote, the Policy becomes effective as of the date of the vote, unless otherwise specified by the Board in requesting such vote. No PPC vote taken prior to final Board action will be considered effective to make a Policy change.

All non-personnel Policy changes may become effective upon the Board's approval of the change, unless the Board specifies a different date.

The District shall create, revise, and adopt a District student media Policy in conjunction with the District's student media advisor(s) and appropriate District administrators.

The District's personnel Policy committees shall annually review the District's student discipline Policies along with State and District discipline data. Based on the committees' annual review, the committees may recommend changes to such Policies to the Board.

Parents, students, and District personnel, including teachers, shall be involved in the development of student discipline Policies.

Cross References:     3.0—LICENSED PERSONAL POLICY COMMITTEE
                      3.1—LICENSED PERSONNEL SALARY SCHEDULE
                      4.14—STUDENT MEDIA AND THE DISTRIBUTION OF
                      LITERATURE
                      4.17—STUDENT DISCIPLINE
                      8.0—CLASSIFIED PERSONAL POLICY COMMITTEE
                      8.1—CLASSIFIED PERSONNEL SALARY SCHEDULE

Legal References:     A.C.A. § 6-13-619(c)
                      A.C.A § 6-13-620
                      A.C.A. § 6-13-636
                      A.C.A. § 6-17-201 et seq.
                      A.C.A. § 6-17-2301 et seq.
                      A.C.A. § 6-18-502
                      A.C.A. § 6-18-1202
                      DESE Rules Governing Student Discipline and School Safety

Additional Reference: ASBA Model Policies

Date Adopted:     January 24, 2022
Last Revised:     June 21, 2023

**1.10—RESERVED**

## 1.11—BOARD MEMBER TRAINING

Individuals who are elected to serve on the District's Board are required to receive annual training related to board service. Board Members who are elected to serve an initial or non –continuous term shall obtain a minimum of nine (9) hours of training by December 31 of the year following their election and a minimum of six (6) hours of training by December 31 of each calendar year thereafter. The initial nine (9) hours of training a Board Member receives shall include:

1.      Training on how to read and interpret an audit report; and
2.      Information regarding school safety and student discipline.

Board Members who have served on the Board for twelve (12) or more consecutive months are required to obtain a minimum of six (6) hours of training by December 31 of each calendar year. Hours a Board Member obtains in excess of the required minimums may be carried forward through December 31 of the third (3rd) calendar year following the year in which the hours were earned.

The Superintendent shall annually prepare a report on board training hours to be presented to the Board at the Board's regular January meeting. The report shall be presented in a table format with a row for each Board Member and columns for each of the following:

1.      The hours of training each Board Member received between January 1 and December 31 of the previous calendar year;
2.      Hours of training, if any, a Board Member carried forward from a previous year that were eligible to be counted by the Board Member towards the previous year;
3.      The sum of numbers 1 and 2; and
4.      The number of training hours the Board Member was required to receive during the previous calendar year.

A Board Member who failed to receive or carry forward the required number of hours of training, as indicated by the report, shall:

1.      Have from January 1 through thirty (30) days following the date of the January board meeting to complete the deficient hours of training; and
2.      Not participate in official business, except for school board training, until the Board Member obtains the deficient hours of training.

A Board Member who fails to receive the deficient hours of training within the time provided shall be removed from the board in accordance with Policy 1.2—BOARD ORGANIZATION AND VACANCIES unless the failure to receive the required hours of training was due to the Board Member's military service or a serious medical condition as indicated by a written sworn statement from the Board Member's treating physician. A Board Member who provides the necessary documentation demonstrating that the failure to receive the required hours of training was due to military service or a serious illness shall have until December 31 of the current calendar year to receive both the hours of training for the current calendar year and those the Board Member failed to obtain during the previous calendar year.

The training shall be focused on topics relevant to school laws, school operations, and the powers, duties, and responsibilities of the members of the Board. The responsibilities include, but are not limited to: legal requirements; role differentiation; financial management; improving student achievement; reading and interpreting an audit report; the duties and responsibilities of the various levels of employees within the District as well as those of the Board; and information regarding school safety and student discipline.

The District is responsible for maintaining a record of the hours of training received by each Board Member. Board Members shall make a concerted effort to submit documentation of training they have received to the Superintendent or the Superintendent's designee. In the absence of such documentation, the District shall attempt to obtain records of training received from training providers.

Such training may be obtained from an institution of higher learning, from instruction provided by the Division of Elementary and Secondary Education (DESE), the Arkansas School Boards Association, or from other providers approved by the DESE.

A statement regarding the number of hours of training received each preceding calendar year shall be:
1.    Part of the District's comprehensive school plan and goals;
2.    Published in the same way as other components of the comprehensive plan and goals are required to be published;
3.    Part of the annual school performance report required to be submitted to, and published by the DESE.

Board Members shall be reimbursed, from school funds, for expenses relating to such training and Board Members shall be paid a per diem stipend for days necessary to attend such training with the amount of such stipend to be determined by the Board in July of each year.

Legal References:     A.C.A. § 6-13-629
                      DESE Rules Governing Required Training for School Board
                      Members
                      Standards For Accreditation 3-A.6 and 5-A.1

Additional Reference: ASBA Model Policies

Date Adopted:     January 24, 2022
Last Revised:

**1.12—COMMITTEES**

From time to time, in order to obtain and/or encourage public participation in the operation of the District, the Board may appoint committees, which may include members of the public, students, parents, and District employees, as well as Members of the Board.

Any committee, which includes among its members a member of the Board, shall operate according to the requirements of the Arkansas Freedom of Information Act.

Legal Reference:        A.C.A. § 25-19-106

Additional Reference: ASBA Model Policies

Date Adopted:        January 24, 2022
Last Revised:

**1.13—SUPERINTENDENT / BOARD RELATIONSHIP**

The Board's primary responsibility is to develop, working collaboratively with the community, a vision and mission for the District. The Board formulates and adopts policies to achieve that vision and elects a Superintendent to implement its Policies. The Board and the Superintendent and the relationship between them set the tone for the District to follow. The relationship is enhanced when both parties understand their roles and carry them out in an ethical and professional manner working to develop a relationship of mutual trust and respect.

The Superintendent and staff are responsible for administering the Board's Policies and will be held responsible for the effective administration and supervision of the District. The Superintendent is authorized to develop and implement practices and procedures to fulfill the Board's Policies, provided such practices and procedures are consistent with the intent of the Board's Policies.

Reference:          ASBA Model Policies

Date Adopted:     January 24, 2022
Last Revised:

## 1.14—MEETING AGENDA

The agenda guides the proceedings of the Board meeting. The Superintendent shall prepare the agenda with consultation from the Board President. Other Members of the Board who desire to have an item placed on the monthly agenda may do so by contacting the Superintendent or, in writing, the Board President by the date established in this Policy and the item will be duly considered for inclusion.

At each regular monthly meeting of the Board, a report or presentation regarding student academic data or performance shall be provided to the Board.

The chairman of the PPC, or the chairman's designee, shall be placed on the Board's meeting agenda to make an oral presentation to the Board to address either a personnel Policy proposed by the Board that the PPC committee has possessed for no less than ten (10) work days or a personnel Policy that the PPC wishes to propose to the Board.

District patrons wishing to have an item placed on the Board meeting's agenda must submit their requests, in writing to the Superintendent, at least five (5) days prior to the meeting of the Board. The written request must be sufficiently descriptive to enable the Superintendent and Board President to fully understand and evaluate its appropriateness to be an agenda item. Such requests may be accepted, rejected, or referred back to the individual for further clarification.

The Superintendent shall notify the Board President of all written requests to be placed on the agenda along with the Superintendent's recommendation concerning the request. No item shall be placed on the agenda that would operate to prejudice the Board concerning a student or personnel matter that could come before the Board for disciplinary or employment considerations or that is in conflict with other District Policy or law.

Patrons whose written request to be placed on the meeting's agenda has been accepted shall have no more than five (5) minutes to present to the Board unless specifically granted additional time by a motion approved by a majority of the Board. The speaker shall limit his/her comments to the approved topic/issue or forfeit his/her right to address the Board.  The Board may choose to discuss the issue presented, but is under no obligation to do so.

During regular meetings, the Board also may permit a total of up to fifteen (15) minutes for public comments.  Individuals desiring to address the Board during this allotted time must sign up prior to the commencement of the meeting and provide the name of the presenter and subject matter of the comments to be offered.  The allotted fifteen (15) minutes will be allocated evenly among the speakers, provided, however, that no speaker will be allotted more than five (5) minutes unless specifically granted additional time by a motion approved by a majority of the Board.  The members of the Board will listen to the patron's presentation, but shall not respond to the presenter during the meeting in which the presentation is made. The Board may choose to discuss the issue presented at a later meeting, but is under no obligation to do so.  The Board in its discretion may choose

to lengthen the time for public comments or eliminate public comments altogether at any meeting.

The Superintendent shall be responsible for Board members having access to the Agenda with all accompanying pertinent information at least four (4) calendar days prior to the meeting, understanding that there will be circumstances requiring amendments or supplemental information prior to the Board meeting.

This Policy's advance notice requirements do not apply to special or called Board meetings.

Cross Reference:     1.9—POLICY FORMULATION

Legal References:     A.C.A. § 6-13-619
                      A.C.A. § 6-17-205
                      A.C.A. § 6-17-2305

Additional Reference: ASBA Model Policies

Date Adopted:     January 24, 2022
Last Revised:     June 21, 2023

**1.15—TORT IMMUNITY**

The District, as well as its agents, officers, employees, and volunteers are immune from liability for negligence, pursuant to A.C.A. § 21-9-301. When allegations of negligence are raised, whether in litigation or not, the statutory grant of immunity will be asserted.

Reference:            ASBA Model Policies

Date Adopted:        January 24, 2022
Last Revised:

**1.16—DUTIES OF BOARD DISBURSING OFFICER**

The disbursing officer, along with the Superintendent, shall be responsible for signing, manually or by facsimile, all warrants and checks other than those issued for food service and activity funds.

In addition, the Disbursing Officer must pre-authorize the electronic transfer of funds. For non-recurring transactions, the authorization can be accomplished by a signed authorization or an email authorizing such a disbursement of funds. For recurring transactions, the Disbursing Officer may provide a one-time, signed authorization.

Cross References:      1.2—BOARD ORGANIZATION and VACANCIES
                       7.20—ELECTRONIC FUND TRANSFERS

Legal Reference:       A.C.A. § 6-13-618(c)

Additional Reference: ASBA Model Policies

Date Adopted:          January 24, 2022
Last Revised:

**1.17—NEPOTISM**

**DEFINITIONS**

"Commissioner" means the Commissioner of Elementary and Secondary Education.

"Family or family member" means:
1.    An individual's spouse;
2.    Children of the individual or children of the individual's spouse;
3.    The spouse of a child of the individual or the spouse of a child of the individual's spouse;
4.    Parents of the individual or parents of the individual's spouse;
5.    Brothers and sisters of the individual or brothers and sisters of the individual's spouse;
6.    Anyone living or residing in the same residence or household with the individual or in the same residence or household with the individual's spouse; or
7.    Anyone acting or serving as an agent of the individual or acting or serving as an agent of the individual's spouse.

"Initially employed" means:
1.    Employed in either an interim or permanent position for the first time or following a severance in employment with the District;
2.    A change in the terms and conditions of an existing contract, excluding: movement of an employee on the salary schedule that does not require Board Action.

**NEW HIRE OF BOARD MEMBER'S RELATIVE AS SCHOOL EMPLOYEE**

The District shall not initially employ a present Board Member's family member for compensation in excess of five thousand dollars ($5,000) unless the District has received approval from the Commissioner. The employment of a present Board Member's family member shall only be made in unusual and limited circumstances. The authority to make the determination of what qualifies as "unusual and limited circumstances" rests with the Commissioner whose approval is required before the employment contract is effective, valid, or enforceable.

Initial employment for a sum of less than five thousand dollars ($5,000) per employment contract or, in the absence of an employment contract, calendar year does not come under the purview of this Policy and is permitted.

The Board Member whose family member is proposed for an employment contract, regardless of the dollar amount of the contract, shall leave the meeting until the voting on the issue is concluded and the absent member shall not be counted as having voted.

**EXCEPTION: SUBSTITUTES**

Qualified family members of Board Members may be employed by the District as substitute teachers, substitute cafeteria workers, or substitute bus drivers for a period of time not to exceed thirty (30) days per fiscal year.

A family member of a Board Member having worked as a substitute for the District in the past does not "grandfather" the substitute. The thirty (30) day maximum limit is applied in all cases.

**EXISTING EMPLOYEES WHO ARE FAMILY MEMBERS OF BOARD MEMBERS— RAISES, PROMOTIONS OR CHANGES IN COMPENSATION**

Any change in the terms or conditions of an employment contract including length of contract, a promotion, or a change in the employment status of a present Board Member's family member that would result in an increase in compensation of more than two thousand five hundred dollars ($2,500), and that is not part of a state mandated salary increase for the employee in question, must be approved by the Commissioner before such changes in the employment status is effective, valid, or enforceable.

**QUALIFICATIONS FOR RUNNING FOR BOARD MEMBER UNCHANGED**

The employment status of a citizen's family member does not affect that citizen's ability to run for, and, if elected, serve the Board provided he/she meets all other statutory eligibility requirements.


Legal References:      A.C.A. § 6-24-102, 105

Additional Reference: ASBA Model Policies

Date Adopted:        January 24, 2022
Last Revised:         June 21, 2023

## 1.18—DISTRICT AUDITS

The District's annual audit serves as an important opportunity for the Board to review the fiscal operations and health of the District. As such, it is vital Board Members receive sufficient explanation of each audit report to enable the members to understand the report's findings and help them better understand the District's fiscal operations.

The District shall have an audit conducted annually within the timelines prescribed by law. The audit shall be conducted by Arkansas Legislative Audit or through the audit services of a private certified public accountant(s) approved by the Board.

The Board shall review each annual audit at the first regularly scheduled board meeting following the receipt of the audit if the District received the audit prior to ten (10) days before the regularly scheduled meeting. If the audit report is received less than ten (10) days prior to a regularly scheduled board meeting, the board may review the report at the next regularly scheduled board meeting following the ten (10) day period.

The Superintendent shall present sufficient supporting/background information relating to the report's findings and recommendations which will enable the Board to direct the Superintendent to take appropriate action in the form of a motion or motions relating to each finding and recommendation contained in the audit report. Actions to be taken will be in sufficient detail to enable the Board to monitor the District's progress in addressing substantial findings and recommendations and subsequently determine that they have been corrected. The minutes of the Board's meeting shall document the review of the audit's findings and recommendations along with any motions made by the Board or actions directed to be taken by the Superintendent or designee.

The Board is responsible for presenting the audit's findings each year to the public.


Legal References:    A.C.A. § 6-1-101(d)(1)(2)(3)
                     A.C.A. § 6-13-620(6)(F)

Additional Reference: ASBA Model Policies

Date Adopted:    January 24, 2022
Last Revised:

## 1.19—BOARD MEMBER LENGTH OF TERM and HOLDOVERS

The District has seven (7) Board Members. During and after 2022, each member shall be elected for a term of service of 5 years, subject to the requirements of A.C.A. § 6-13-631. Members may be re-elected to serve consecutive terms so long as the Member continues to meet the eligibility requirements for Board service.

A Board Member remains in office until the Member's successor has been sworn into office. In the event a Board Member's term of office has expired and no one is elected to replace the Member, or the individual elected fails to receive the oath of office within the time set in statute, the Board Member becomes a "holdover" and is treated as having been re-elected to office for another term; Board Members may only serve one term as a holdover and may be re-elected to the Board at the expiration of his/her term. Consequently, should no individual be elected to the position at the expiration of the holdover term, the position shall be declared to be vacant and filled in accordance with Policy 1.2—BOARD ORGANIZATION AND VACANCIES and Arkansas law. Board Members not wishing to continue as a holdover may resign from office and the position is to be filled in accordance with Policy 1.2.

Cross Reference:        Policy 1.2—BOARD ORGANIZATION AND VACANCIES

Legal References:       A.C.A. § 6-13-608
                        A.C.A. § 6-13-611
                        A.C.A. § 6-13-616
                        A.C.A. § 6-13-617
                        A.C.A. § 6-13-630
                        A.C.A. § 6-13-631
                        A.C.A. § 6-13-634
                        Arkansas Attorney General Opinion 2003-319
                        Arkansas Attorney General Opinion 2015-112
                        Arkansas Constitution Article 19, Section 5

Additional Reference: ASBA Model Policies

Date Adopted:           January 24, 2022
Last Revised:

**1.20—RESERVED**

**1.21—DATE OF ANNUAL SCHOOL BOARD ELECTION**

The annual Board election for the District shall be held on the:
1.      Date of the preferential primary election in even-numbered years; and
2.      Second Tuesday in May in odd-numbered years.

Individuals wishing to run for office in the election may begin circulating petitions to collect signatures ninety (90) days before:
1.      The Tuesday after the second Monday in November for elections held concurrently with a preferential primary election for years when the office of President of the United States will appear on the ballot at the general election; or
2.      March 2 for elections held concurrently with a preferential primary election for years in which the office of Governor will appear on the ballot at the general election and elections held in odd years.

Candidates may file their petition, affidavit of eligibility, and political practices pledge with the county clerk during a one week filing period that closes at noon on:
1.      The Tuesday after the second Monday in November for elections held concurrently with a preferential primary election for years when the office of President of the United States will appear on the ballot at the general election; or
2.      March 2 for elections held concurrently with a preferential primary election for years in which the office of Governor will appear on the ballot at the general election and elections held in odd years.

A copy of this Policy will be provided annually to the county clerk and the county election commission at least one hundred (100) days before the day the candidate filing period opens.


Legal References:      A.C.A. 6-14-102
                       A.C.A. § 6-14-111
                       A.C.A. § 7-7-203

Additional Reference: ASBA Model Policies

Date Adopted:          January 24, 2022
Last Revised:          June 21, 2023

**1.22—RECORDING OF BOARD MEETINGS**

The District shall record all meetings of the District's Board, including subcommittee meetings, except as follows:

1.    Executive sessions of the Board;
2.    Student disciplinary hearings that are closed to the public.

The District shall retain meeting recordings for one (1) year.


Cross References:    1.12—COMMITTEES
                     6.1—COMMUNICATION GOALS
                     7.15—RECORD RETENTION AND DESTRUCTION


Legal Reference:     A.C.A. § 25-19-106

Additional Reference: ASBA Model Policies

Date Adopted:        January 24, 2022
Last Revised:        June 21, 2023

## 1.24—BOARD REPRESENTATIVE ON EDUCATION SERVICE COOPERATIVE BOARD OF DIRECTORS

The Board shall adopt a resolution to appoint an individual as the Board's representative on the Guy Fenter Education Service Cooperative Board of Directors during a legally held meeting of the Board that is signed by both the Board president and secretary.

The individual selected to represent the Board on the Guy Fenter Education Service Cooperative Board of Directors shall fall under one (1) of the following:
- The District Superintendnet;
- An employee of the District;
- A member of the District's Board; or
- A member of the District community who resides within the boundaries of the District.

A copy of the resolution shall be forwarded to the director of the Co-op:
- By June 30 of each year; and
- As soon as possible after the Board selects a representative to fill a vacancy.

The appointment as the Board's representative on the Guy Fenter Education Service Cooperative shall be for a two (2) year term.  An individual shall hold over until the individual's successor is appointed.  The Board may appoint the same individual for subsequent terms.

The Board's position on the Guy Fenter Education Service Cooperative Board of Directors shall not be vacant if the individual was a District employee, including the superintendent, or a member of the Districts Board and the individual leaves the District's employee or the Board but continues to reside within the District boundaries.


Legal Reference:        A.C.A. § 6-13-1006

Additional Reference:    ASBA Model Policies

Date Adopted:        June 21, 2023
Last Revised:        May 20, 2024