**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**FORT SMITH DIVISION**

**JOEY MCCUTCHEN and FELIX CURRY**                                    **PLAINTIFF**

**vs.**                              **CASE NO. 2:25-cv-02016-TLB**

**DALTON PERSON, individually and as**
**President of the Fort Smith Board of Education,**
**and FORT SMITH SCHOOL DISTRICT**                                    **DEFENDANTS**

### BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants, Dalton Person, Individually and as President of the Fort Smith Board of Education, and the Fort Smith School District (collectively, the "District") submit this Brief in Support of their Motion to Dismiss Plaintiffs Joey McCutchen and Felix Curry's ("Plaintiffs") Complaint.

### INTRODUCTION

This lawsuit is the third in a line of cases that Felix Curry and his lawyer, Joey McCutchen, have filed against the District stemming from the District's decision not to issue Curry a new contract for the upcoming school year. The instant case arises from the District's decision to prohibit Mr. Curry and his lawyer from discussing a then-pending employee grievance filed by Mr. Curry at a School Board meeting. This limited restriction did not violate Plaintiffs' First or Fourteenth Amendment rights. The public-comment portion of a School Board meeting is a limited public forum, where restrictions on speech are allowed when the restrictions are reasonable and viewpoint neutral. As alleged in the Complaint, the School Board restricted Plaintiffs' speech because Mr. Curry had a pending employee grievance. Allowing Curry or his representative to discuss the personnel matter prematurely could prejudice the School Board's decision on the grievance, which is contrary to District policy and Arkansas law. This restriction was reasonable

given the circumstances, and it was viewpoint neutral because it was based on the speakers' status, not their viewpoint. For the reasons set forth herein, Plaintiffs' Complaint should be dismissed.

## FACTUAL BACKGROUND[1]

Plaintiff Felix Curry was the head football coach for Northside High School in the District in the fall of 2024. Comp. ¶ 9. In November 2024, the District informed Curry that the District had decided not to issue him a new contract for the 2025-2026 school year. *Id*. In December 2024, Curry was staffed as a teacher in the Student Detention Center. *Id*. ¶ 10. Dissatisfied with his Student Detention Center duties and with the District's decision not to issue him a new contract, Curry filed an employee grievance pursuant to District policy. *Id*. ¶¶ 11-13; Ex. 1, 2, and 3. Mr. McCutchen represented Curry in connection with his grievance and was engaged by Curry sometime prior to December 11, 2024. *Id*. ¶ 11 & Ex. 1.

The Fort Smith Board of Education (the "School Board") held a regularly scheduled meeting on December 16, 2024. *Id*. ¶ 14. Prior to the meeting, Curry sought to address the School Board. *Id*. ¶ 11 & Ex. 1. The District, through counsel, advised Mr. McCutchen that Curry would not be permitted to address the School Board during the meeting if he "intend[ed] to address his employment" because Curry was "in the process of filing a grievance, and addressing the Board in advance would be improper." *Id*., Ex. 1. Dissatisfied with this response, only 50 minutes later, Mr. McCutchen personally requested to be put on the agenda to speak at the School Board meeting. *Id*., Ex. 2. The District, through counsel, responded, "If your intent is to address the Board regarding Coach Curry, or any personnel matter, that will not be permitted." *Id*., Ex. 3. The District explained that the School Board meeting was not the proper forum to discuss a pending grievance

---

[1]    Defendants assume for purposes of this Motion to Dismiss only that the facts alleged in the Complaint are true. *See Delker v. MasterCard Int'l, Inc*., 21 F.4th 1019, 1024 (8th Cir. 2022).

related to a personnel matter because the "grievance [needed] to proceed pursuant to District policy, with the ultimate appeal going to the Board." *Id.* ¶¶ 11-13; Ex. 1-3.

During the School Board meeting a few days later, there was a "Citizens Participation" portion of the meeting during which up to fifteen (15) minutes are permitted "for public comments." *Id.* ¶ 16, Ex. 4, & Ex. 5, § 1.14. Pursuant to District policy, "[i]individuals desiring to address the Board during his allotted time must sign up prior to the commencement of the meeting and provide the name of the presenter and subject matter of the comments to be offered." *Id.*, Ex. 5, § 1.14. At the meeting, some members of the public utilized the public comment period to discuss Curry. *Id.* ¶ 19. Mr. McCutchen attempted to speak about Curry during the public comment period but was not allowed to do so because it was not the proper forum to discuss Curry's pending employee grievance. *Id.* ¶¶ 11-13, 18, 20-24; Ex. 1 and 3.[2]

At the time of the meeting, Curry had a pending employee grievance with the District, and Mr. McCutchen represented Curry in relation to that grievance. *Id.* ¶¶ 11-13 & 21; Ex. 1-3. The grievance process, as outlined in District Policy 3.25, culminates in a hearing before the School Board where the employee, or his representative, has the opportunity to present evidence and testimony, and the School Board makes a final decision on the grievance. *See* Policy 3.25, attached hereto as **Exhibit B**.[3] District Policy 1.14 provides: "No item shall be placed on the agenda that

---

[2]     Mr. McCutchen followed the speaker-registration process set forth in Policy 1.14, and his speaker form stated that the subject matter of his request was "Felix Curry." *See* **Exhibit A**. The Court may consider the speaker form, as it is referenced in the Complaint (Compl. ¶ 18 & Ex. 5, § 1.14) and is integral to the claim. *See Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (explaining "in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned").

[3]     Plaintiffs attached only a portion of the District policies as Exhibit 5 to the Complaint. The Court may properly consider the entirety of the District policies because they are necessarily embraced by the Complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999); *see also Trustees of Welfare & Pension Funds of Loc. 464A – Pension Fund v. Medtronic PLC*, 726 F. Supp. 3d 938, 982

would operate to prejudice the Board concerning a student or personnel matter that could come before the Board for disciplinary or employment considerations or that is in conflict with other District Policy or law." *See* id., Ex. 5, § 1.14. This Policy is in accordance with State law, which provides that "[a] request to be placed on the agenda shall not be granted if placement on the agenda: (i) Prejudices the board of directors concerning a student or personnel matter that is on the agenda for the board's consideration of a disciplinary or employment action; or (ii) Is in conflict with school district policy or law." Ark. Code Ann. § 6-13-619(a)(2)(B).

<u>**LAW AND ARGUMENT**</u>

**A. Legal Standard**

Rule 12(b)(6) requires dismissal of a complaint that fails to state a claim on which relief may be granted. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. When considering a motion to dismiss, the Court "will not assume the truth of a legal conclusion couched as a factual allegation." *Norgren v. Minnesota Dep't of Hum. Servs.*, 96 F.4th 1048, 1054–55 (8th Cir. 2024). Even if a complaint does state a claim, it may still be dismissed under Rule 12(b)(6) if "the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense." *Weatherly v. Ford Motor Co.*, 994 F.3d 940, 943-44 (8th Cir. 2021).

Plaintiffs must bring their claims for constitutional violations under 42 U.S.C. § 1983. *See Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a claim for relief under § 1983, a

---

n.35 (D. Minn. 2024). All District policies are available at: https://www.fortsmithschools.org/about-fsps/district-policies.

plaintiff must allege sufficient facts to show "(1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). This standard applies to both the First Amendment and Fourteenth Amendment claims at issue in this case, so the claims are addressed together below. To the extent Plaintiffs intended to bring a Fourteenth Amendment Equal Protection claim, Plaintiffs must also demonstrate that they have "been treated differently than others similarly situated" to them. Rouse v. Benson, 193 F.3d 936, 942 (8th Cir. 1999). If a claim is based on an "unavailing" legal theory, it may be dismissed under Rule 12(b)(6). *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

**B. The School Board's Decision Did Not Violate The First Amendment.**

The restriction on Plaintiffs' speech at issue in this case did not violate their First Amendment rights. The citizen participation portion of the School Board meeting is a limited public forum. The School Board's decision, pursuant to District policy and Arkansas law, to prohibit placement on the agenda if placement on the agenda would prejudice the School Board concerning a personnel matter or employment action was reasonable and viewpoint neutral. Accordingly, the actions taken by the School Board were proper and did not violate Plaintiffs' constitutional rights. Therefore, Plaintiffs' Complaint should be dismissed.

*i.    The citizen participation portion of the School Board meeting is a limited public forum.*

When evaluating whether a private speaker has been unconstitutionally excluded from use of a forum, courts first evaluate the nature of the forum. *See Powell v. Noble*, 798 F.3d 690, 698 (8th Cir. 2015). Public comment portions of school board meetings are considered limited public forums. *See Brooks v. Francis Howell School District*, 599 F. Supp. 3d 795, 803 (E.D. Mo. 2022); *see also Green v. Nocciero*, 676 F.3d 748, 753 (8th Cir. 2012). "Limited public forums (sometimes

called nonpublic forums) include public properties that are not by tradition or designation public forums but have been opened to the government for limited purposes, communicative or otherwise." *Id*. Courts consider the nature of the space, the traditional use of the property, and the government intent and policy with respect to the property, as well as any special characteristics regarding the environment in which those areas exist. *Id*. at 700. Public discussion at School Board meetings is limited to the citizen participation portion, and even that portion is opened to the public only during certain times for limited purposes. Specifically, here, District Policy 1.14 states that "[d]uring regular meetings, the Board … may permit a total of up to fifteen (15) minutes for public comments" but "the Board in its discretion may choose to lengthen the time … or eliminate public comments altogether at any meeting." *See* Compl., Ex. 5, § 1.14. Similarly, the Service Center auditorium where the School Board meeting was held also is not a public forum because it is open to the public only during certain times and for limited purposes. Thus, the citizen participation portion of the School Board meeting at issue here is a limited public forum.

ii.    *The restriction was reasonable and viewpoint neutral.*

The School Board's decision not to allow Plaintiffs to speak during the citizen participation portion of the School Board meeting was reasonable to preserve the integrity of the grievance process, a structured mechanism for resolving personnel grievances. It also was viewpoint neutral, as it was based solely on Curry's status as an employee with a pending grievance and not because the School Board opposed the Plaintiffs' views.

In a limited public forum, "speech may be limited to use by certain groups or dedicated solely to the discussion of certain subjects, and the public entity may impose restrictions on speech that are reasonable and viewpoint neutral." *Coffelt v. Omaha School District*, 309 F. Supp. 3d 629, 638 (W.D. Ark. 2018) (Brooks, J.) (internal quotations omitted). The restrictions on speech,

6

however, "cannot be designed to suppress expression merely because school officials oppose the speaker's view." *Id.* (internal quotations omitted). The inquiry takes into account the function of the forum and "all surrounding circumstances." *See Powell*, 798 F.3d at 700. "Control over access to a nonpublic forum may be based on the subject matter of the speech, on the identity or status of the speaker, or on the practical need to restrict access for reasons of manageability or the lack of resources to meet total demand." *Id.* (internal citations omitted). There is "more flexibility to regulate speech in limited public forums to facilitate the intended purposes of those forums." *Id.* at 699.

**Reasonableness.** The School Board's decision not to allow Plaintiffs to speak during the public comment portion of the Board meeting was reasonable in light of the purpose of the forum. "A restriction must be reasonable in light of the purposes which the forum at issue serves and the reasonableness of a restriction on access is supported when substantial alternative channels remain open for the restricted communication." *Id.* at 700 (internal citations omitted). The purpose of the restriction, as evidenced by the emails between Curry's counsel and the District's counsel, was to ensure that a personnel matter related to a pending grievance by Curry, an employee, was not prematurely discussed before the School Board. This restriction, which applies to all employees with pending grievances, ensures that the School Board is not prejudiced concerning employment matters that may come before the Board as part of the grievance process.[4] The restriction also is supported by Arkansas statute, which states that the board should not grant a request to be placed on the agenda if the request is contrary to district policies. *See* Ark. Code Ann. § 6-13-619(a)(2)(B).

---

[4] To be clear, in the context of this matter and the restriction imposed, Plaintiff McCutchen was not acting as a typical member of the public but rather as an agent of, and thus an extension of, Curry. Allowing McCutchen to speak on Curry's behalf regarding the personnel matter would subvert the policy's purpose, as it would be tantamount to Curry addressing the issue himself. *See Restatement (Third) of Agency* § 1.01 (2006) (agent's actions imputed to principal).

Further, the restriction was reasonable in light of the purpose of the citizens participation portion of the meeting, which as the name suggest, is to allow "public comments." Compl., Ex. 5, § 1.14. It is not designed for employee comments about pending grievances.

Moreover, Plaintiffs had a substantial alternative channel that remained open for the restricted communication, even if the alternative channel was not his first choice. *Powell*, 798 F.3d at 701. The School Board meeting in question was not the only avenue for the Plaintiffs to express their concerns. In fact, Curry was required to follow the District's grievance policy, which is a robust alternative to the public comment portion of a School Board meeting and that culminates in a full hearing before the School Board. The Complaint reflects that he was taking advantage of this alternative. For these reasons, the Board's decision was reasonable.

***Viewpoint neutral.*** The School Board's decision not to allow Plaintiffs to speak during the public comment portion of the Board meeting was viewpoint neutral. A restriction is viewpoint neutral when the rationale for the regulation of speech *is not* "the specific motivating ideology or the opinion or perspective of the speaker." *Francis Howell School District*, 599 F. Supp. 3d at 803 (internal citations omitted). To determine if the restriction is viewpoint neutral the Court must determine the purposes or motives of the School Board. *Id*.

In *Perry Educational Association v. Perry Local Educations' Association*, the Supreme Court analyzed whether an educators' union's preferential access to an interschool mailbox system based on a labor contract with the school district was a violation of the First and Fourteenth Amendments. 460 U.S. 37 (1983). The Supreme Court determined that the school board did not intend to "discourage one viewpoint and advance another" by allowing one union to use the mailboxes but not the other. *Id*. at 957. Instead, the Supreme Court

> characterize[d] the access policy as based on the *status* of the respective unions rather their views. Implicit in the concept of the nonpublic forum is the right to

make distinctions in access on the basis of subject matter and speaker identity. These distinctions may be impermissible in a public forum but are inherent and inescapable in the process of limiting a nonpublic forum to activities compatible with the intended purpose of the property. The touchstone for evaluating these distinctions is whether they are reasonable in light of the purpose which the forum at issue serves.

*Id*.

Here, the School Board restricted Plaintiffs' ability to speak during the public comment period because the citizens participation portion of the meeting is for "public comment," not employee grievances. Compl., Ex. 5, § 1.14. Further, as evidenced by the emails between Plaintiffs and Defendants attached to the Complaint, the District's restrictions on speech were limited only as to speech about Curry's employment. Notably, the District did not prevent Curry or McCutcheon from speaking on any other matters. Compl., Ex. 1 ("that will be declined if he intends to address his employment"; *id*., Ex. 3 ("if your intent is to address the Board regarding Coach Curry, or any personnel mater, that will not be permitted."). Those limitations are in place because the "citizen participation [portion of the meeting] is not a forum to address a personnel matter, especially when a grievance is being submitted." Compl. Ex. 3. The communication further explained that the grievance must proceed pursuant to District policy, with the ultimate appeal going to the Board, and it would be improper for Curry or his representative to address the Board prematurely at the December 16 School Board meeting. *Id*.

The fact that several other members of the public addressed the School Board regarding Coach Curry during the citizens participation portion of the School Board meeting (Compl. ¶ 19, 23) confirms that the District's restrictions were not viewpoint discrimination. These other persons spoke in support of Curry during the meeting, demonstrating that the School Board allowed comments about Curry and did not suppress perspectives. These members of the public were allowed to speak because they were not an employee with a pending grievance.

Finally, Curry, and McCutchen as Curry's representative, intended to speak as a District employee on matters of personal interest—his personal personnel matter. The law is clear that when a school district employee speaks "as an employee upon matters only of personal interest, such as personnel matters, the First Amendment does not offer protection." *McGee v. Pub. Water Supply, Dist. No. 2 of Jefferson Cty.*, 471 F.3d 918, 920 (8th Cir. 2006) (quoting *Connick v. Myers*, 461 U.S. 138, 147 (1983)). Accordingly, Plaintiffs were not intending to speak generally as citizens, and the First Amendment does not offer protection here. For these reasons, the restriction applied was viewpoint neutral because it was based on status not viewpoint.

**C.  The Claims Against Defendant Dalton Person Should Be Dismissed.**

Mr. Person, the School Board President, is sued in both his personal and official capacities. In addition to the reasons for dismissal set forth above, the claims against Mr. Person suffer from additional legal infirmities that independently justify dismissal.

First, the claims against Mr. Person in his official capacity are redundant of those against the District and therefore should be dismissed. The Eighth Circuit has consistently held that "a suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). This principle applies with equal force in the context of school districts and their officials. *See, e.g., Brittany B. v. Martinez*, 494 F. Supp. 2d 534, 539 (W.D. Tex. 2007) (dismissing § 1983 claims against school board members in their official capacities as redundant of claims against the district).

Second, Mr. Person is entitled to qualified immunity with respect to the individual-capacity claims asserted against him. Under the doctrine of qualified immunity, "a court must dismiss a complaint against a government official in his individual capacity" that fails to state a claim for violation of "clearly established statutory or constitutional rights of which a reasonable person

would have known." *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013) (internal quotation marks and citation omitted). Courts apply a two-pronged test to assess qualified immunity: (1) whether the plaintiff has stated a plausible claim for violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the alleged violation. *Id*.; *see also Pearson v. Callahan,* 555 U.S. 223, 236 (2009) (permitting courts to address either prong first at their discretion). Here, both prongs decisively favor Mr. Person.

As demonstrated in Section B, *supra*, Plaintiffs fail to allege a plausible constitutional violation. The Complaint's allegations, even taken as true, do not establish that Mr. Person's actions in enforcing District policy infringed any constitutional right.  But even if a violation could be inferred, Plaintiffs cannot satisfy the second prong—that the right was "clearly established." A right is clearly established only when "existing precedent must have placed the statutory or constitutional question beyond debate." *Dillard v. O'Kelley*, 961 F.3d 1048, 1052 (8th Cir. 2020) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The Supreme Court has emphasized that an official's conduct violates clearly established law only when "the contours of the right are sufficiently clear" that "every reasonable official would have understood that his conduct violates that right." *Ashcroft*, 563 U.S. at 741 (internal quotation marks and citation omitted). Here, there is no controlling authority—nor even a "robust consensus of persuasive authority"— demonstrating that Mr. Person's actions violated any clearly established right. *See De La Rosa v. White*, 852 F.3d 740, 745 (8th Cir. 2017) (requiring a robust consensus of persuasive authority absent controlling precedent).

Moreover, the Complaint and its exhibits show that Mr. Person's actions were undertaken solely in his capacity as School Board President, pursuant to District policy and guided by the advice of the District's legal counsel in enforcing District policy. *See* Compl. ¶¶ 20-22; Ex. 1-3.

Mr. Person's adherence to his official duties and reliance on counsel's guidance place his conduct well within the "breathing room" qualified immunity affords officials to make reasonable judgments. *See Ashcroft*, 563 U.S. at 743 ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law.") (internal quotation marks omitted).

In sum, because Plaintiffs fail to allege a plausible constitutional violation—let alone one that was clearly established—and because Mr. Person acted reasonably within the scope of his official duties and relied on legal counsel's advice in doing so, he is entitled to qualified immunity. The individual-capacity claims against him therefore should be dismissed.

## <u>CONCLUSION</u>

Plaintiffs were not provided the opportunity to speak during the citizen participation portion of the School Board meeting because Curry, an employee of the District, had a pending grievance with the District that could have culminated in a hearing before the School Board, and District policy and State law prohibit the placement on the agenda of a Board meeting if the placement could prejudice the Board related to a personnel matter or employee action. Further, the Citizen Participation portion of the Board meeting was a limited public forum, the restriction on Plaintiffs speech was reasonable in light of the purpose, and the restriction was based on status rather than viewpoint. As a result, Plaintiffs' Constitutional rights were not violated, and their Complaint should be dismissed.

WHEREFORE, Defendants Dalton Person, Individually and as President of the Fort Smith Board of Education, and Fort Smith School District respectfully requests this Court grant their

Motion to Dismiss, dismiss the Complaint with prejudice, and for all just and proper relief to which they may be entitled.

Respectfully submitted,

Marshall S. Ney, Ark. Bar No. 91108
Katherine C. Campbell, Ark. Bar No. 2013241
Alexa R. Mizer, Ark. Bar No. 2022066
FRIDAY, ELDREDGE & CLARK, LLP
3350 S. Pinnacle Hills Parkway, Suite 301
Rogers, AR 72758
Office: (479) 695-6040
Facsimile: (501) 244-5389
mney@fridayfirm.com
kcampbell@fridayfirm.com
amizer@fridayfirm.com