UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JOEY MCCUTCHEN and
FELIX CURRY                                                                                    PLAINTIFFS

v.                        Case No. 2:25-cv-02016-TLB

DALTON PERSON, individually
and as President of the Fort
Smith Board of Education, and
Fort Smith Public School District                                                DEFENDANTS

## BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

Comes now the Plaintiffs, Joey McCutchen and Felix Curry, and for their Brief in Support of their Response to Defendants' Motion to Dismiss, state as follows:

### I. The District's Board Meeting is a limited public forum.

There is no dispute the District's Board Meeting is a limited public forum. The government has dedicated certain property, in this instance the space used for school board meetings, for "use by the public as a place for expressive activity." *Perry Educ. Ass'n v Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983).

Once the venue is established as a limited public forum, "the public entity may impose restrictions on speech that are reasonable and viewpoint neutral. These restrictions, however, cannot be designed to suppress expression merely because school officials oppose the speaker's view." *Ark. Educ. Television Comm'n*, 523 U.S. at 677-78 (1998); *Powell v. Noble*, 798 F.3d 690, 700 (8th Cir. 2015). Plaintiffs have

1

been deprived of their First Amendment rights through restrictions which are simply the whims of Defendants.

**II. No regulations existed authorizing the denial of Plaintiffs' speech.**

    A.  <u>*There is no written regulation authorizing Defendants' actions.*</u>

The District's policies offer the public two ways to address the Board at a meeting, only one of which was invoked in this instance, the public comment period. Inexplicably, the "Reasonableness" section of Defendants' brief focuses on the other method, in which a citizen may place an item on the agenda and speak about that item. Plaintiffs are not contesting any denial of rights based on an attempt to be placed on the agenda.

Both ways are described in Section 1.14, "Meeting Agenda" of the Board's policies. Compl. Ex. 5. To be placed on the agenda, the policy requires a person make 1) a written request to the Superintendent; 2) at least five days prior to the meeting; and 3) explain the purpose of the request. The Superintendent may accept, reject, or request more information and must notify the Board President of the decision. The policy then provides, "No item shall be placed on the agenda that would operate to prejudice the Board concerning a student or personnel matter that could come before the Board for disciplinary or employment considerations . . . "

If accepted, a person "shall have no more than five (5) minutes to present to the Board unless specifically granted additional time by a motion approved by a majority of the Board. The speaker shall limit his/her comments to the approved topic/issue or forfeit his/her right to address the Board." Compl. Ex. p

Plaintiffs' attempts to speak were not made in relation to an agenda request. The only request made prior to the meeting was an email from Mr. McCutchen to Mr. Nye in which Mr. McCutchen requested to be placed on either the agenda or signed up for public comment. Mr. Nye, who evidently is serving as counsel in this matter as well as being a fact witness to the events, denied both these requests. Compl. Exs. 1 & 3. Plaintiffs did not then send a formal request to the Superintendent, but instead Plaintiff McCutchen appeared in person at the meeting and completed the form to speak during public comment. Motion to Dismiss, Ex. A.

The District denied Mr. McCutchen's attempt to speak at the hearing and directed the police officer to remove him from the meeting. The rationale for Defendants' denial, in both Mr. Nye's email and the Motion to Dismiss, was claimed to be due to Mr. Curry's grievance then pending. "This restriction [on speech], which applies to all employees with pending grievances, ensures that the School Board is not prejudiced concerning employment matters that may come before the Board as part of the grievance process." Brief in Support of Mtn. to Dismiss. P. 7.

The claimed restriction does not exist in the District's policies. Nowhere in the public comment section of the District's policy is any limit on who can speak or what topics they can speak upon. After describing the process to be placed on the Agenda, Section 1.14 states:

> During regular meetings, the Board also may permit a total of up to fifteen (15) minutes for public comments. Individuals desiring to address the Board during this allotted time must sign up prior to the commencement of the meeting and provide the name of the presenter and subject matter of the comments to be offered. . , . The members of the Board will listen to the patron's presentations, but shall not respond

3

> to the presenter during the meeting. . .The Board may choose to discuss the issue presented at a later meeting, but is under no obligation to do so. [Emphasis added.]

The public comment period is distinguished from the request to be placed on the agenda, "the Board **also** may. . . " (emphasis added). In the instructions for the public comment period there is no reference to employees, their counsel, or the grievance process at all.

Further, the grievance policy itself contains no restriction on an employee or anyone acting on their behalf addressing the Board during the public comment period of a Board meeting. Motion to Dismiss Ex. B. The Defendants have simply created this restriction in a single email from the District's counsel for the sole purpose of preventing Plaintiffs, and only Plaintiffs, from speaking to the Board during the designated public comment period. It is not a policy, but a whim based solely on the identity of the speakers. "The government discriminates against viewpoints when it disfavors certain speech because of the specific motivating ideology or the opinion or perspective of a speaker.'" *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 31 (2d. Cir. 2018) (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995). In this instance, the Defendants discriminated against Plaintiffs based on their expected opinion and perspective. Defendants' actions are not viewpoint neutral and are a violation of the Plaintiffs' First Amendment rights.

*B. The denial was not reasonable.*

It is nonsensical to claim it is reasonable to deny the person affected by a District's action or their counsel to comment on a matter at the Board's meeting, but every other member of the public may do so. The District's policies contain no other restriction on an employee or their counsel's contact with Board members in any other setting, which would include direct contact via email, text, phone or even face to face conversations. It is equally nonsensical to allow employees to have private conversations with public officials but prohibit them from making statements to those same members in public. The public was already commenting on the very issue of the employee grievance, the firing of Mr. Curry, the Northside football coach. The only reason cited for preventing Plaintiffs from expressing their viewpoint was a grievance policy that did not contain any prohibition on either the speakers or the Board from discussing the matter in any forum.

The touchstone for evaluating whether the District's restrictions of Mr. Curry and his counsel are whether they are reasonable in light of the purpose which the restriction serves. *Perry* at 49. According to Defendants' brief, the purpose is for "public comment" not "employee grievances." Brief in Support of Mtn. to Dismiss, p. 8. In support of this Defendants' brief cite only their own counsel's email to Mr. McCutchen.

In *Green v. Nocciero*, 676 F.3d 748, 753-754 (2012), the Eighth Circuit addressed this very issue of discriminating based on the speaker in a school board meeting, concluding:

> For First Amendment purposes, the School Board meeting was what has variously been called a nonpublic or a limited public forum. The School Board could reasonably restrict public access to this forum "based on the subject matter of the speech, on the identity or status of the speaker, or on the practical need to restrict access for reasons of manageability or the lack of resources to meet total demand. This necessarily included the authority to remove an unruly or disruptive member of the audience to prevent his badgering, constant interruptions, and disregard for the rules of decorum. But having chosen to conduct its business in public and to hear citizen views, the Board could not deny access to the meeting and, while it could limit the subject matter of citizen comments, it could not discriminate against a speaker based on his viewpoint. [Citations and internal quotation marks omitted).

There is no allegation that Plaintiffs were disruptive. The subject matter was broached by other members of the public without interruption by Defendants. The Defendants simply discriminated against the Plaintiffs herein in denying them the right to speak on the same subject matter.

  *C. This is not a First Amendment retaliation case.*

  The Defendants offer the case of *McGee v. Pub. Water Supply, Dist. No. 2 of Jefferson Cty.,* 471 F3d 918, 920 (8th Cir 2006) for the contention "The law is clear that when a school district employee speaks 'as an employee upon matters only of personal interest, such as personnel matters, the First Amendment does not offer protection." Brief in Support of Mtn to Dismiss. p. 10. *McGee* involved a retaliation claim of an employee being terminated based on what he claimed was speech protected by the First Amendment. Plaintiff Curry is not arguing he was retaliated against based on his attempt to speak at the Board meeting, as he was told of his demotion <u>prior</u> to the Board meeting, and of course Mr. McCutchen was not employed by the Board. *McGee* has no application to this matter.

6

### III. Defendant Person is not entitled to qualified immunity.

The standard for considering motions to dismiss based on qualified immunity is a two-step inquiry. A plaintiff must show "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional right; and (2) the right was clearly established at the time of the deprivation. *Howard v. Kan. City Police Dep't*, 570 F3d 984, 988 (8th Cir. 2009).

As discussed previously, Plaintiffs have been deprived of a constitutional right by the denial of their right to speak during the public comment period at the District's school board meeting. As this Court held in *Schnkloth v. Deakins*, 2022 U.S.Dist. LEXIS 64856, 2022 WL 1050380 (2022) it is settled law that such an action violates the First Amendment. In *Schnekcloth*, this Court denied assertions of qualified immunity by two Washington County justices of the Peace who directed the removal of a citizen from a Washington County Quorum Court meeting. The Court's findings in *Schnekloth* rejecting the qualified immunity claims are applicable here:

> Both the Supreme Court and the Eighth Circuit have repeatedly held viewpoint discrimination is impermissible in a limited, designated public forum.
>
> Existing Eighth Circuit caselaw explicitly addresses this in the context of public meetings. For instance, in *Lee v. Driscoll*, the court explained that "[w]hen the government holds meetings that are open to public participation, excluding particular members of the public may violate the First Amendment." 871 F.3d 581, 585 (8th Cir. 2017) (citing *Madison Joint Sch. Dist. No. 8 v. Wis. Emp't Relations Comm'n*, 429 U.S. 167, 175-76, 97 S. Ct. 421, 50 L. Ed. 2d 376 (1976)).
>
> . . .
>
> The Eighth Circuit's approach mirrors that of its sister circuits, many of which have held public meetings represent limited, designated public

forums in which viewpoint discrimination is impermissible. Defendants do not point to any case, decided at any level, that states otherwise.

The Court finds a reasonable public official in JPs Duncan and Deakins's respective positions would have known it was constitutionally impermissible to remove individuals from a public meeting based on viewpoint. The law gave both Defendants "fair warning that their alleged conduct was unconstitutional." *Bonner v. Outlaw*, 552 F.3d 673, 679 (8th Cir. 2009) (quoting *Brown v. Fortner*, 518 F.3d 552, 561 (8th Cir. 2008)).

Likewise, Mr. Person, who is an attorney, had ample notice his actions were constitutionally impermissible prior to his denial of Plaintiffs' First Amendment rights. His claim of qualified immunity should be denied.

## IV. Conclusion

Based on the foregoing, Plaintiffs pray Defendants' Motion to Dismiss be denied.

> Respectfully submitted,
> JOEY MCCUTCHEN, PLAINTIFF
> FELIX CURRY, PLAINTIFF
>
> By:_____
> Matt Bishop, AB#2001276
> BISHOP LAW FIRM
> 3739 N. Steele Blvd. Ste. 380
> Fayetteville, Arkansas 72703
> p: (479) 363-6171
> f: (479) 363-6461
> matt@bishoplawfirm.org

## CERTIFICATE OF SERVICE

On April 21, 2025, a copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF, which will send notification to all counsel of record.

_____
Matt Bishop

9